OLD COLONY TRUST CO. v. DUBUQUE LIGHT & TRACTION CO.
(DOANE et al., Interveners).

(Circuit Court, N. D. Iowa, E. D. October 28, 1898.)

**1. FRAUDULENT REPRESENTATIONS — MATERIALITY—STATEMENT OF FACT OR OPINION.**
A false statement as to the past earnings of a street railroad, made by a purchaser of the road to the owners of another line to induce a consolidation, is not a mere statement of opinion, but a representation of fact.

**2. SAME—RIGHT TO RELY ON REPRESENTATIONS.**
A party in making a contract has a right to rely on a statement made by the other party as to a matter within the latter's knowledge, where the only other information obtainable would be a statement of another.

**3. SAME—STATEMENT OF INTENTION.**
A statement by the purchaser of a street railroad that, in carrying out its plan of reorganization, it intended to, and would, place the line in first-class condition, made to the owners of another line to induce a consolidation of the two, is not only a promise, but also a representation of an existing fact, as to its intention, which authorizes a rescission of the contract of consolidation by the other parties, where the promise is not only not fulfilled, but it is shown that the promisor had no such intention at the time.

**4. RESCISSION OF CONTRACT—FRAUD—RIGHTS AS AGAINST TRANSFEREE.**
Where a corporation of another state purchased the property of an insolvent street-railroad company, and organized a new company for its management, the officers and directors of which were all employés of the foreign corporation, nonresidents of the city where the property was situated, and without financial interest therein, the new company, which also took title to a second railway line through a contract made by the foreign corporation, and induced by its fraud, stands in no better position to resist a suit for the rescission of such contract, and a recovery of the property thereby conveyed, by the parties defrauded, than does the foreign corporation.

**5. CORPORATIONS—SUIT BY STOCKHOLDERS—RIGHT TO MAINTAIN.**
Where a contract for the transfer of the property of a street-railroad company was made by the stockholders individually, a suit for its rescission on the ground of fraud may be maintained by them in their own names, joining the corporation as a defendant; and when such relief is invoked by petition of intervention in a federal court in a pending suit, of which the court already has jurisdiction, it is not necessary to make the allegations required by equity rule 94.

**6. EQUITY—LACHES TO BAR RELIEF.**
Laches, to bar relief in equity, is not a mere matter of time, like limitations, but rather a question of the inequity of granting the relief, by reason of some change in the condition or situation of the parties or property since the suit might have been brought.

**7. RESCISSION OF CONTRACTS—NATURE OF RELIEF GRANTED—POWER OF COURT OF EQUITY.**
A corporation purchased a street railroad, and organized a new company to hold and operate it. It also procured the conveyance to such company of a second line of road by means of fraudulent representations made to its owners, and the company issued bonds secured by mortgage

on the consolidated lines.    On a bill filed by the former owners of the second line, it was determined that, as against the company and the corporation guilty of the fraud, they were entitled to a rescission of the contract by which the consolidation was effected. *Held*, it appearing that a reconveyance of the property would be inequitable as against the bondholders, that the court had power to decree a rescission, but to require the complainant to accept in lieu of the specific property a judgment for its value against the corporation through whose fraud they were deprived of it.

Submitted on issues presented by the bill filed by the interveners, and the answers thereto.

Runnells & Burry and Powers, Lacey & Brown, for complainant.

J. C. Harper and Henderson, Hurd, Lenehan & Kiesel, for interveners.

Eugene H. Lewis, for General Electric Co.

James S. Cummins, for Oscar H. Olson.

Glenn Brown, for defendant.

SHIRAS, District Judge.    This case is now before the court upon the issues arising upon the intervening bill filed by William H. Doane, Lucius H. Bigelow, and Edward P. Griswold, who by order of court of February 1, 1896, were allowed to intervene for the protection of their rights in the suit brought by the Old Colony Trust Company, trustee, against the Dubuque Light & Traction Company, for the purpose of foreclosing a trust deed executed by the latter company, under date of June 1, 1893, upon certain street-railway properties in the city of Dubuque, Iowa, comprising what are usually called the Iowa Street and the Eighth Street Lines.    The first-named line is also called in the evidence the Allen & Sweeney Line, from the name of the firm that originally built the same.    The title to this property passed to a corporation created under the name of the Dubuque Electric Railway, Light & Power Company (which, for convenience, will be designated as the "Power Company"), which executed a trust deed upon its property and franchises to the Bay State Trust Company, under date of March 1, 1890, to secure its mortgage bonds to the amount of $285,000.    On May 5, 1892, a bill was filed in this court on behalf of W. K. Richardson and others against the Power Company, the Bay State Trust Company, and others, in which proceedings Horace Poole was appointed receiver of the Iowa Street Line; and on December 7, 1892, the Bay State Trust Company filed its cross bill, as trustee, asking a foreclosure of the trust deed executed to it, on the ground that the Power Company had defaulted in the payment of the interest on its mortgage bonds; and on the 19th of January, 1895, a decree was entered foreclosing the trust deed, and ordering a sale of the property covered thereby.    Prior to the appointment of the receiver, in May, 1892, the Power Company had become indebted to the Thomson-Houston Company and the Edison Electric Company for supplies furnished in equipping and maintaining its line; and when these companies were merged into the General Electric Company, in June, 1892, the latter company became thereby a heavy creditor of the Power Company, and, being thus interested, it undertook the reorganization of the property, which was rendered necessary by the impending foreclosure

of the trust deed to the Bay State Trust Company. The conduct of the work of reorganization was intrusted to B. E. Sunny, who had been from the latter part of the year 1889 the Western manager of the Thomson-Houston Company, and who, when that company was merged into the General Electric Company, became the Western manager of the last-named company. Mr. Sunny testifies that after the receiver was appointed, in May, 1892, and with a view to reorganizing the property:

"We ascertained about the outstanding obligations of the property, and communicated with a number of the creditors, to find out on what basis their claims could be handled. We also made an arrangement with the people representing the holders of first mortgage bonds, by which a reorganization could be carried through, and the property put on a good financial basis; and those efforts at reorganization resulted in an agreement between the bondholders of the Power Company and the Thomson-Houston Electric Company and a trust company in Boston."

This agreement, which bears date August 31, 1892, recites:

That the Power Company is in the hands of a receiver. "That the Electric Company proposes to reorganize said railway company, and put its property in first-class repair and condition, including the addition of such machinery and apparatus as may be needed, at a cost of more than $50,000, provided the property is sold by the receiver, and can be purchased at a price that will warrant such an expenditure, and the bondholders will assent to a cancellation of the present first mortgage bonds they hold, and take in lieu thereof bonds of the reorganized company, as hereinafter set out."

And thereupon the bondholders agreed to unite with the trustee in obtaining a decree of sale upon the foreclosure of the trust deed to the Bay State Trust Company, and to place their bonds in the hands of the Old Colony Trust Company for exchange for the new bonds to be issued; the Electric Company agreeing to bid at the foreclosure sale an amount sufficient to cover the bonds, the prior liens, and the costs and expenses, and, if it became the purchaser at the sale, to immediately organize a new company to take the property, which new company was to authorize an issue of bonds to the amount of $400,000, to be secured by a mortgage on the property, present or after acquired, of the company, of which issue $100,000 were to remain in the hands of the trustee, to be certified and used only for improvements or betterments, or in the purchase of other railway property, and the remaining $300,000 were to be certified and used—First, in retiring the old issue of bonds, dollar for dollar; and, second, the balance left after payment of the old bonds was to be delivered to the Electric Company in payment of claims held by it against the Power Company, in payment of the repairs, improvements, and extensions necessary to put the purchased property in good working order and condition, and in payment of such other creditors of the Power Company as the Electric Company might name. In pursuance of this plan of reorganization, as already stated, the Bay State Trust Company filed its bill praying for a foreclosure of the trust deed held by it; and on the 19th day of January, 1893, a decree of foreclosure was entered in this court, under which the property was sold at master's sale on March 1, 1893, the sale being approved by the court on April 12, 1893; and the receiver, under an order of court entered April 29th, delivered

up possession of the property to the Old Colony Trust Company on May 1, 1893. In order to complete the plan of reorganization which had been entered into by the bondholders, the General Electric Company, and the Old Colony Trust Company, it was further necessary to organize a new corporation at Dubuque to undertake the management of the property, and to execute the new bonds and trust deed which were to be delivered to the Old Colony Trust Company. To that end, James S. Cummins, the attorney at Chicago of the General Electric Company, and B. E. Sunny, came to Dubuque on May 3, 1893. Mr. Cummins testifies that he brought with him, already prepared, the articles of incorporation of the Dubuque Light & Traction Company, the trust deed, the by-laws, and the resolutions, necessary to perfect the transfer of the property; that he filed the articles of incorporation in the office of the recorder of Dubuque county; that he was then notified by Mr. Sunny that a deal had been made by him with Messrs. Doane, Bouton, Griswold, and Bigelow with regard to the Eighth Street Line; and that he took no further steps towards completing the organization of the Traction Company until after the return of the parties to Chicago on the night of May 3d. From the evidence it appears that Messrs. Doane, Griswold, and Bigelow had come to Dubuque to look after their interests in the Eighth Street Railway, which extended along Eighth, Hill, Third, and other streets, and formed the only line running up the bluffs which extend along the western portion of the city of Dubuque, and was managed by a corporation known as the Eighth Street & West Dubuque Street-Railway Company. This property had been in the hands of a receiver, but at the time named, to wit, May 3, 1893, was practically owned by the interveners herein, Messrs. Doane, Griswold, and Bigelow, who, as already stated, had come to Dubuque for the purpose of re-equipping the road, and endeavoring to put it on a paying basis. Finding these gentlemen at Dubuque, Mr. Sunny approached them with a proposition to combine the two lines of railway, and after a conference of some hours' duration an agreement was reached to the effect that the interveners were to sell to the Dubuque Light & Traction Company the Eighth Street Line, and to take in payment bonds to the amount of $35,000 and stock to the amount of $70,000 in the Traction Company; and thereupon the parties went to Chicago on the night of May 3d, and on May 4th a written agreement was entered into between Oscar H. Olson and Messrs. Doane, Bigelow, Griswold, and Bouton, whereby the latter-named parties agreed to sell to Olson the entire issued stock of the Eighth Street Railway, and to receive in payment $70,000 of full-paid common stock, and also 35 of the first mortgage bonds of the Dubuque Light & Traction Company, of $1,000 each, bearing date June 1, 1893, and secured by first mortgage upon all of the property then held by the Old Colony Trust Company under its purchase of the property of the Power Company, and upon after-acquired property, which would include the property of the Eighth Street Line (except the power-house realty), to be thereafter transferred to the Traction Company; the total issue of first mortgage bonds to be $400,000, of which all in excess

of $300,000 were to be issued in accordance with the provisions of
the deed of trust for after-acquired property or permanent better-
ments.    Under the same date a further agreement in writing was
entered into between the General Electric Company and Messrs.
Doane, Bigelow, Griswold, and Bouton, wherein it was recited that:

"Whereas, the said Electric Company is largely interested in the property
formerly owned by the Dubuque Electric Railway, Light & Power Company,
and has, by virtue of an agreement with the bondholders thereof, control
of the reorganization thereof, and has in pursuance of such agreement or-
ganized the Dubuque Light and Traction Company, which is desirous of pur-
chasing the property of the Eighth Street and West Dubuque Street Railway
of Dubuque, Iowa, a corporation under the laws of the state of Iowa; and
whereas, a contract has this day been entered into between one O. H. Olson
and said parties of the second part: Now, therefore, in consideration of
the premises, and the agreements on the part of the parties of the second
part, the said Electric Company guaranties the delivery of the bonds and
stock, and the performance of the other conditions of the agreement, on the
part of said Olson, as therein provided."

It may be here said that it is not questioned that Olson had no
personal interest in the property that was being dealt with, and
he acted as the representative or alter ego of the Electric Company;
and therefore he need not be further referred to, as the Electric
Company assumed the responsibility for all action taken in his
name.    So, also, it appears that C. B. Bouton's interest has been
purchased by Mr. Griswold; and hence he is not interested in the
litigation now pending, and did not become a party to the inter-
vening petition filed in this case.

From the record it further appears that substituted articles of
incorporation of the Dubuque Light & Traction Company were
adopted and filed for record in the recorder's office at Dubuque
under date of May 31, 1893; the board of directors being com-
posed of George K. Wheeler, W. J. Ballard, James S. Cummins, and
John L. Martin; Mr. Wheeler being the president of the company,
and Mr. Cummins acting as secretary.    Mr. Wheeler testifies that
from 1893 to 1897, both inclusive, he was chief engineer of the
General Electric Company.    Mr. Ballard testifies that since June 1,
1892, he has been, and is, collection manager of the Electric Com-
pany.    Mr. Martin testifies that from June 1, 1892, to January 1,
1894, he was manager of the Central Station lighting department
of the Electric Company at Chicago.    And from the record it ap-
pears that Mr. Cummins was in charge of the legal business of that
company at Chicago.    None of these gentlemen resided in Dubuque,
and it does not appear that they had any actual pecuniary interest
in the Dubuque Light & Traction Company; and as it further ap-
pears that by resolution of the board of directors of the Traction
Company, dated July 20, 1893, 4,550 shares out of the total of 6,000
shares of the capital stock of the Traction Company were issued to
the Electric Company, it is entirely clear that the Traction Com-
pany was wholly and completely under the control of the Electric
Company.    It further appears that in carrying out the plan of re-
organization a trust deed dated June 1, 1893, was executed by the
Traction Company, conveying to the Old Colony Trust Company all
its property, then owned or after acquired, in trust to secure its

issue of $400,000 of bonds, payable in 17 years from date; it being provided that upon a failure to pay the interest maturing on said bonds the trustee could declare the whole amount of the bonds to be due, and enforce payment thereof by a foreclosure and sale under the trust deed. The bonds thus provided for were issued, and $35,000 thereof were delivered to Messrs. Doane, Bigelow, and Griswold upon the completion of the sale of the Eighth Street Line, the transfer of which was made to the Dubuque Light & Traction Company on September 11, 1893. This company failed to make payment of the first year's interest on the bonds, the coupons coming due December 1, 1893, and June 1, 1894, being left wholly unpaid; and thereupon, on December 1, 1894, the Old Colony Trust Company filed the present bill against the Dubuque Light & Traction Company, declaring the whole of the mortgage debt to be due; praying a decree for the foreclosure of the trust deed, and a sale of the mortgaged property; averring that the Traction Company was insolvent, that the security was inadequate, that the property was in bad condition, and that a receiver should be appointed to take charge thereof. To this bill the Traction Company, being the defendant thereto, entered its appearance on December 1, 1894, and consented to the appointment of a receiver, which appointment was forthwith made; and thereupon the defendant company filed its answer, confessing the material allegations of the bill, and consenting that a decree of foreclosure should be entered as prayed for. On January 27, 1896, leave of court having been obtained to that end, Messrs. Doane, Griswold, and Bigelow intervened in the case, and filed their petition praying for a rescission of the contract and transfer whereby the property of the Eighth Street Line was conveyed to the Dubuque Light & Traction Company, on the ground that such transfer had been procured through false statements and practices on the part of the General Electric Company and its officers and agents. To this intervening petition the Old Colony Trust Company, the Traction Company, the General Electric Company, Oscar H. Olson, and the Eighth Street & West Dubuque Street-Railway Company were made defendants, and all have answered the petition, save the Eighth Street Company. Upon the issues thus arising a very large amount of evidence has been taken, and upon an abstract thereof, and after full argument, both oral and in writing, the questions necessary to a disposal of the intervening petition have been submitted for decision.

In the intervening bill filed herein it is averred that, in order to induce Messrs. Doane, Bigelow, Griswold, and Bouton to sell the Eighth Street Line, the General Electric Company represented to them that, by virtue of an agreement with the bondholders of the Power Company, it had organized the Dubuque Light & Traction Company, and had arranged for the transfer to the Traction Company of the property formerly owned by the Power Company, and for the execution of a mortgage or trust deed, already drawn, covering said property, as well as all after-acquired property, to secure a total issue of $400,000 of first mortgage bonds of said Traction Company, with 6 per cent. interest, payable semiannually; that, of

this total issue of bonds, $100,000 were to be issued, in accordance with the terms of the mortgage, in payment for after-acquired property or permanent betterments: that, of the remaining $300,-000 of bonds, so much thereof as was necessary was to be used in retiring the bonds of the Power Company, and the balance, being in the neighborhood of $100,000, was to go to the General Electric Company, and in consideration thereof that company was to expend $50,000 or more in new equipment, improvements, betterments, and extension of the Traction Company's property, and in putting the same in first-class working order; that the Iowa Street Line had been in the hands of a receiver for the period of about one year, and that during that time the receipts of the receiver from the property had been sufficient to pay all the expenses of operating and maintaining the property, including receiver's expenses, and leaving a net balance large enough to pay a year's interest, at 6 per cent., on the proposed issue of $300,000. of bonds; and that if the properties of the Iowa and Eighth Street Lines were combined, and put in first-class condition, and relieved from the expenses of a receivership, the Traction Company, operating the same, would be certain to earn the interest upon its bonds, and would shortly be able to pay a dividend on its stock.   It is further averred that, relying upon these representations, Mr. Doane and his associates transferred the Eighth Street Line to the Traction Company, receiving therefor $35,000 of bonds and $70,000 of the stock of the Traction Company; that the several representations so made by the Electric Company and relied on by interveners were untrue; and that, having been deceived and misled thereby, interveners are entitled to rescind the contract whereby they conveyed the Eighth Street Line to the Traction Company.   The alleged misstatements of facts relied on as grounds for rescinding the contract of sale of the Eighth Street Line may be restated in the following form:   (1) That the net earnings of the Iowa Street Line while in the hands of the receiver, after payment of expenses of operating and maintenance, including receiver's expenses, were sufficient to pay one year's interest, at 6 per cent., on $300,000; that is, the net earnings of the year would be equal to the sum of $18,000.   (2) That as part of the plan of reorganization of the Iowa Street Line, undertaken by the General Electric Company, that line was to be put in first-class working order by the General Electric Company.   (3) That, out of the $100,000 to be delivered to the General Electric Company, that company would expend at least $50,000 in new equipments, improvements, betterments, and extensions.   (4) That, out of the total issue of $400,000 of bonds, $100,000 were to be reserved, and to be issued, in accordance with the provisions of the trust deed, to the Old Colony Trust Company.

The next question that naturally arises is whether these allegations of fact are sustained by the proof; that is, does it appear that these representations were in fact made to the interveners for the purpose of inducing them to sell the Eighth Street Line, in order that it might be combined with the Iowa Street Line, and pass under the control and management of the Traction Company.   It would sub-

serve no good purpose to enter upon a discussion of the evidence in detail. It is sufficient to say that the clear preponderance thereof is with the interveners; and the court finds, as matters of fact, that the representations as above stated were made to Messrs. Doane, Bigelow, Griswold, and Bouton by the General Electric Company for the purpose of inducing them to sell the Eighth Street Line, and that the named parties were thereby induced to make sale of that line in reliance upon the statements thus made them. With respect to the truth or falsity of the representations, the evidence shows, and the court so finds as matter of fact, that the earnings of the Iowa Street Line while in the hands of the receiver were not sufficient to pay a year's interest on $300,000 of bonds, at 6 per cent., after paying the expenses of operating and maintaining the same, including the expenses of the receiver. And the court further finds, as matter of fact, from the evidence, that the General Electric Company did not, as part of the reorganization of the Iowa Street Line, put the same in first-class working order. And the court further finds that the General Electric Company did not apply at least $50,-000 out of the $100,000 of bonds issued to it in new equipment, betterments, or extensions of the Iowa Street Line. And the court further finds, as a matter of fact, from the evidence, that the General Electric Company wrongfully induced the Old Colony Trust Company to issue to it a large part of the $100,000 of bonds that were to be reserved, and misapplied them to its own use and benefit. With reference to the statements made about the earnings of the Iowa Street Line under the management of the receiver, it is contended on behalf of defendants that these representations were of the nature of mere puffing, or trade talk, upon which the interveners were not entitled to rely as being anything more than the mere expression of opinion, and, further, that the interveners should not have relied thereon, but for their own protection should have made inquiry into the facts. If the statements made had been with reference to the future earnings of the road, to the effect that they would be large enough to pay a named interest, the construction sought to be put thereon by the defendants might be admissible, but such is not the case. The statement made had reference to the past, not to the future. It was a positive averment to the effect that the Iowa Street Line, while in the hands of the receiver, had earned an amount sufficient to pay all expenses, and to pay interest at 6 per cent. on $300,000. The statement was not made as the expression of a mere opinion or hope or belief, either as to the past or the future, but was made for the purpose of impressing upon the interveners the fact that the Iowa Street Line had shown, under the receiver's management, an earning capacity of the amount stated,—a statement which, if true, would be of the most persuasive force in inducing the interveners to agree to a combination of the Eighth Street and Iowa Street Lines; and responsibility therefor cannot now be evaded on the theory that this statement was merely idle puffing, not intended to be relied upon by the parties to whom it was made. Neither is there merit in the suggestion that the interveners had not the right to rely upon this statement of fact thus made to them, because they might, by inquiry on

89 F.—51

their own part, have ascertained what the actual fact was in this particular. Had the interveners undertaken to make inquiry about this matter, they would have been compelled to rely upon the statements of the parties in charge of the Iowa Street Line. There was not in existence any record to which they could go for the information, and it is not to be supposed that it would have been open to them to make a search through the books and papers in the company's office in order to ascertain the facts. The utmost that can be said is that possibly, if they had made inquiry at the company's office, the parties in charge might have made a statement as to the fact of the earnings of the line; but, if statements are to be relied on, why were the interveners not justified in relying on the statement made them by Mr. Sunny, acting as the agent of the General Electric Company? Owing to the intimate relation which the evidence clearly shows existed between Mr. Sunny and the management of the Iowa Street Line both before and after the appointment of the receiver, it is manifest that this matter of the earnings of the line was one fully within his knowledge, but not equally open to the knowledge of the interveners; and therefore it cannot be said that they were not justified in relying upon the statement made to them.

With respect to the statements touching the improvements that were to be made in carrying out the plan of reorganization of the Iowa Street Line, it is claimed by defendants that these cannot be deemed to be false statements, justifying a rescission of the contract for the sale of the Eighth Street Line, because they were in the nature of promises to be performed in the future, for which an action for damages is the sole remedy. These representations, however, were as to the then existing purpose and intent of the General Electric Company with reference to the improvements that were to be made in carrying out the plan of reorganization; and the falsity of the statement lies in the fact that the evidence shows, not only that the Electric Company did not make the improvements it had promised to do, but that it did not intend to make them when the representation was made. Thus, in Edgington v. Fitzmaurice, 29 Law Rep. 479, which was an action for damages on the ground of deceit or false representations, it was said in the opinion of the court:

"It was argued that this was only the statement of an intention, and that the mere fact that an intention was not carried into effect could not make the defendants liable to the plaintiff. I agree that it was a statement of intention, but it is nevertheless a statement of facts."

In the concurring opinion of Bowen, L. J., in this case, it is said:

"A mere suggestion of possible purposes to which a portion of the money might be applied would not have formed a basis for an action of deceit. There must be a misstatement of an existing fact, but the state of a man's mind is as much a fact as the state of his digestion. It is true that it is very difficult to prove what the state of a man's mind at a particular time is, but, if it can be ascertained, it is as much a fact as anything else. A misrepresentation as to the state of a man's mind is therefore a misstatement of fact."

The main reliance of the defendant with respect to this branch of the case is the claim that the General Electric Company did substantially perform all that it represented it would perform in the

way of putting the property into good order, and making additions and improvements thereto. Briefly stated, the General Electric Company had represented to the interveners that it would put the railway property into first-class working condition, and that there should be left in the hands of the trustee $100,000 of bonds, to be used by the reorganized company for the future betterment, improvement, and extension of the property. By the procurement of the General Electric Company the $400,000 of bonds have all been issued and appropriated; $200,000 being applied to retiring the old bonds issued by the Dubuque Electric Light & Power Company, and $50,000 in the purchase of the Eighth Street Line, and expenses connected therewith; thus leaving $150,000 of the bonds in the hands of the General Electric Company. In addition thereto it claims to hold notes to the amount of $12,385 executed by the Traction Company; and its contention is that these securities are its property, as payment for its expenditures made on the property covered by the trust deed to the Old Colony Trust Company. The nature and extent of the expenditure actually made on the property in the alleged performance of its representations and agreements in that particular may be readily characterized from a few facts which cannot be disputed: The possession of the property was delivered up by Receiver Poole May 1, 1893, and the bill for the foreclosure of the mortgage to the Old Colony Trust Company was filed December 1, 1894. During this period of time the practical control of the property, especially as to the repairs thereon, was in the hands of the General Electric Company; and during this time nothing was paid to the bondholders, either on principal or interest. In the bill filed herein by the Old Colony Trust Company on the 1st day of December, 1894, it is averred that the property is in bad condition; and the records of the case show that the taxes had not been paid on the property, and, in order to enable the receiver to keep the property going, the court was obliged to authorize the issuance of receiver's certificates in the sum of $5,000. Thus, the receipts of the road had been absorbed, the taxes had not been paid, much of the current expenses had not been paid, bonds to the amount of $150,000 had passed to the Electric Company, together with $12,385 of the promissory notes of the Traction Company; and the claim of the Electric Company is that these securities, or the proceeds, had been used in paying the expenses of reorganizing the Iowa Street Line, in paying certain claims due from it, and in making repairs or betterments on the roadbed and its equipment. In what is known as the "Reorganization Agreement between the Bondholders," the Electric Company, and the Power Company, in clause "b" of section 3 thereof, it is expressly provided that the balance of $100,000 of bonds left after retiring the bonds issued by the Power Company were to be delivered at par to the Electric Company in payment of the claims it then held against the Power Company, and any moneys it might advance for repairs, improvements, or extensions necessary to put the property in good working order and condition, and in payment of such other debts of the Power Company as the Electric Com-

pany might designate.   From this provision of this agreement, as well as from the verbal statements made to the interveners, the purposes to which the proceeds of the $100,000 bonds were properly applicable are made plain; and they certainly do not include any expense or outlay incurred by the Electric Company in reorganizing the company, the burden of which reorganization the Electric Company had assumed.   Yet, in accounting for the disposition of the property of the Traction Company coming into its hands, the Electric Company claims a credit for fully $13,000 paid to the Old Colony Trust Company for trustee and attorney fees, and for the attorney's fees in connection with the foreclosure of the Power Company's mortgage,—expenses which surely cannot be rightfully charged against the interveners, either directly or indirectly; and yet if the Electric Company can thus absorb the proceeds of these bonds, instead of applying the same to putting the railway property into first-class order, the result is to lessen the value of the property to which the bondholders must look for the payment of their claims.

It is furthermore claimed on behalf of the Electric Company that it has expended in repairing and improving the property the sum of $64,253.   The evidence shows that, instead of furnishing new material such as was necessary to put the property into proper condition, the Electric Company furnished second-hand machinery, which had been discarded by the street-railway companies at Cincinnati and Denver; and the facts developed in the evidence fully justify the conclusion that, while much material was furnished and work done, the street-railway lines in question were not put into first-class order and condition.   The representation made to the interveners was that the General Electric Company would put the Iowa Street Line into first-class order; but the contention now is that the only obligation resting upon the Electric Company was to furnish the articles described in a contract signed by the General Electric Company and the Dubuque Light & Traction Company, which bears date June 10, 1893, and for which the Traction Company agreed that the Electric Company was to receive $50,000 of the first mortgage bonds of the Traction Company, and notes of the Traction Company to the amount of $12,385.   The evidence shows that this contract was prepared for execution on May 3, 1893,— that being the original date thereof,—but when the deal with the interveners was entered into, and the completion of the organization of the Traction Company was postponed, the signing of this equipment contract was postponed until June 10th.   The interveners were left in ignorance, however, of the fact that there was a contract already drawn up, to be signed by the General Electric Company and the Traction Company,—the latter being officered by employés of the Electric Company,—whereby the Electric Company could claim payment for the repairs and improvements it was about to put on the property; disregarding the promise and representation it had repeatedly made, that the Iowa Street Line, as part of the reorganization plan, was to be put into first-class working order.   Under the arrangement and representations made

to induce the interveners to enter into the plan of combining the two lines, the interveners were entitled to have the Iowa Street Line put in first-class working order; to have at least $50,000 of the bonds used in placing improvements, betterments, and extensions upon the combined lines; and to have $100,000 of the total issue of bonds left in the hands of the trustee, to be used in future for improvements, or the purchase of other railway property.    If these representations had been carried out in good faith, no cause of complaint would have existed on the part of the interveners; but, when the interveners entered into the arrangement for the transfer of the Eighth Street property, they were left in ignorance of the fact that the General Electric Company had already arranged a contract to be executed with its alter ego, the Traction Company, as soon as the latter was organized, under cover of which it would claim that it was entitled to demand payment from the Traction Company for all the supplies and machinery it furnished, even though the major part, if not all, of the same were required to put the line in good working order, and that in payment for the equipment furnished it was to receive $50,000 of bonds and $12,385 in promissory notes of the Traction Company; thus imposing a burden on the property which would probably render wholly valueless the stock which the interveners had agreed to take in part payment of the property sold by them. The evidence not only shows that the General Electric Company failed to perform its agreement with respect to the equipment it was to put on the line, but the fact that this equipment contract was already prepared and ready for execution when the deal was made with the interveners, and after the deal was made the same was executed, and is now relied on as the measure of the obligation resting on the Electric Company, justifies the conclusion that the company did not intend to perform the representations it made to the interveners, but did intend, through the control it exercised over its own creation, the Traction Company, to do what the evidence discloses has been done, to wit, to obtain the issuance of, and absorb for its own benefit, all the bonds not needed to retire the old issue of $200,000, and in return therefor to expend less than $70,000 in furnishing repairs and equipment, much of which was second-hand and of inferior value, and in the payment of some $12,000 of claims existing against the Power Company.    No further discussion of the evidence is needed to show that the facts proven bring the case within the established rules governing the rescission of contracts. Thus, in Farrar v. Churchill, 135 U. S. 609, 10 Sup. Ct. 771, it is said:

"The general principles applicable to cases of fraudulent representation are well settled.    Fraud is never presumed, and, where it is alleged, the facts sustaining it must be clearly made out.    The representation must be in regard to a material fact, must be false, and must be acted upon by the other party in ignorance of its falsity, and with a reasonable belief that it was true.    It must be the very ground on which the transaction took place, although it is not necessary that it should have been the sole cause, if it were proximate, immediate, and material."

In Plow Co. v. Carson, 18 C. C. A. 606, 72 Fed. 387, it is stated:

"Nothing is more deceitful than half the truth.    This and many other like misrepresentations made by the officers of the appellants were not mere

exaggerations of the value of the stock or assets of this corporation. They were fraudulent misrepresentations of material facts that were actually within their knowledge, or that the appellee had a right to presume, from their relation to the corporation, were within their knowledge. They constituted fraud, resulted in damage, and warranted the conclusion which the master reached. A vendor who makes a false statement regarding a fact material to the sale, either with knowledge of its falsity, or in ignorance of its falsity, when, from his special means of information, he ought to have known it, and thereby induces his vendee to purchase, to his damage, is liable in an action at law for the damage the purchaser sustains through the misrepresentation, or to have the sale rescinded in a suit in equity, at the option of the purchaser."

The evidence in this case demonstrates that the representations made to the interveners were material. They were concerning matters peculiarly within the knowledge of the General Electric Company. They were made for the purpose of inducing the interveners to sell the Eighth Street Line. The interveners had a right to rely thereon, and did in fact rely thereon, and were thereby induced to sell the Eighth Street Line. And it also is proven that the representations so made were false, within the knowledge of the General Electric Company; and as it is proven that the Traction Company was organized by the General Electric Company for the purpose of carrying out the purposes of the Electric Company, and its board of· directors was composed of employés of the Electric Company, and, furthermore, as it took the title to the Eighth Street Line through the contract made by the Electric Company with the interveners, it follows that it stands in no better position than the Electric Company.

It thus appears that, as against the Electric and Traction Companies, the interveners have established a right to demand a rescission of the contract whereby they were induced to transfer the Eighth Street Line, unless some one or more of the matters of defense pleaded by the defendants are of such a nature as to preclude the granting of a· decree of rescission. On behalf of defendants it is claimed that relief cannot be granted, because the suit should have been in the name of the Eighth Street & West Dubuque Street-Railway Company. The evidence shows that the misrepresentations were made to Doane and his associates, who were the owners of the stock in the Eighth Street Line; and the contract of May 4, 1893, which is the one sought to be rescinded for fraud, was not signed by the Eighth Street Company, but by Messrs. Doane, Griswold, Bigelow, and Bouton, in their individual capacity. Furthermore, the Eighth Street Company is made a party to the suit, and therefore all the parties who can possibly have an interest in the litigation are before the court.

These facts are a sufficient answer, also, to the point, made by defendants, that the intervening petition and the proof do not show the facts necessary to be shown in order to enable a stockholder to maintain a suit to enforce a right belonging to the corporation, under the requirements of equity rule 94. The reasons leading to the adoption of this rule are fully given in Hawes v. Oakland, 104 U. S. 450, and Huntington v. Palmer, Id. 482; the purpose being to prevent the wrongful exercise of the jurisdiction of the federal courts by bringing a suit in the name of a stockholder when the jurisdiction

could not have been invoked if the suit had been brought in the name of the corporation. Jurisdiction in this case in this court had been obtained by the filing of the original bill by the Old Colony Trust Company, and whether the intervention was made in the name of the Eighth Street Company, or in the names of the stockholders, has no effect whatever on the question of the jurisdiction; and the case is clearly not one for the application of the rule in question, especially in view of the fact that the contract sought to be rescinded was not made with the corporation, but with the stockholders personally, and the corporation is made a party to the suit.

It is next contended on behalf of defendants that the delay in bringing this suit for rescission amounts to laches which will defeat the relief sought, and that it must be held that the parties, by their action, have affirmed the contract. The rule governing the defense of laches is thus stated in Galliher v. Cadwell, 145 U. S. 368, 12 Sup. Ct. 873:

"The cases are many in which this defense has been invoked and considered. It is true that, by reason of their differences of fact, no one case becomes an exact precedent for another, yet a uniform principle pervades them all. They proceed on the assumption that the party to whom laches is imputed has knowledge of his rights, and an ample opportunity to establish them in the proper forum; that by reason of his delay the adverse party has good reason to believe that the alleged rights are worthless, or have been abandoned; and that, because of the change in condition or relations during this period of delay, it would be an injustice to the latter to permit him to now assert them. * * * They all proceed upon the theory that laches is not, like limitation, a mere matter of time, but principally a question of the inequity of permitting the claim to be enforced,—an inequity founded upon some change in the condition or relations of the property or the parties."

In Townsend v. Vanderwerker, 160 U. S. 171, 16 Sup. Ct. 258, it is said:

"The question of laches does not depend, as does the statute of limitations, upon the fact that a certain definite time has elapsed since the cause of action accrued, but whether, under all the circumstances of the particular case, plaintiff is chargeable with a want of due diligence, in failing to institute proceedings before he did."

In this case it does not appear that the position or relation of the General Electric Company, of the Traction Company, or of the bondholders who exchanged the bonds of the Dubuque Electric Light & Power Company for the bonds of the Traction Company has been changed in any substantial particular during the period that intervened before the petition for rescission was filed, in January, 1896. So far as the owners of the bonds of the Power Company are concerned, under the plan of reorganization, to which they were parties, they had agreed to take in exchange for the bonds of the Power Company an equal amount of the bonds of the Traction Company, secured by a mortgage on the Iowa Street Line; and if the Eighth Street Line is now freed from the lien of the trust deed to the Old Colony Trust Company, and the bonds issued to the interveners are returned for cancellation, together with a repayment of the expenditures made on the Eighth Street Line over

and above the receipts therefrom, the original bondholders would be as well off as though the transfer of the Eighth Street Line had never been made. So far as the Electric and Traction Companies are interested, it is not shown that their position or relation to the property has been changed by reason of any delay on part of the interveners in moving for a rescission of the contract. It is not claimed that material evidence has been lost through the death of any party connected with the transactions, and it does not appear, therefore, that any good reason exists for holding, on behalf of the original bondholders, or of the Electric or Traction Company, that relief by way of rescission should be refused to the interveners by reason of the fact that the petition for rescission was not filed until in January, 1896; it appearing from the evidence that much time was necessarily occupied on part of the interveners in endeavoring to ascertain the real condition of affairs. Neither does the evidence support the claim that the interveners by their acts affirmed the contract, thus indicating their election not to rescind the same. The only matters relied upon as evidence of affirmance are the fact that Mr. Doane was present at, and possibly voted his stock at, a meeting of the stockholders of the Traction Company held in December, 1894 (but it does not appear that he then had knowledge of the facts upon which the right of rescission is based; and, unless he had such knowledge, it cannot be held that such act upon his part would indicate a purpose to waive the right of rescission), and the further fact that the interveners, through their attorney, wrote to the Electric Company that they would not oppose the issuance of receiver's certificates. As the issuance of these certificates was intended to protect the property as a whole while it was under charge of the court, the action of the interveners in this particular amounted only to agreeing that the receiver should protect the property while in his charge, which agreement in no sense would be inconsistent with the right of rescission. The natural conclusion to be drawn from the evidence is that, when the interveners first commenced to investigate the affairs of the Traction Company, they did so in the belief that the bankrupt condition of the property might be due to mismanagement on part of the Traction Company; and it was not until some progress had been made in the investigation that it became apparent that they had been misled into making the original sale of the Eighth Street Line, and that reason existed for asking a rescission thereof; and, under the circumstances of this case, the interveners were entitled to a reasonable time and opportunity to ascertain the situation fully, before they were compelled to make a final election of the course they would pursue; and there being nothing in the evidence which shows that the interveners, after obtaining knowledge of the facts, affirmed the contract in question, it must be held that this defense is not made out; and therefore, upon the entire case, it must be held that the interveners, as against the General Electric Company and the Dubuque Light & Traction Company, are entitled to rescind the contract and sale whereby the Eighth Street Line was conveyed to the Traction Company, on the

ground that such sale and transfer were obtained from the interveners by misstatements and false representations.

On behalf of the Old Colony Trust Company it is urged that, granting that the interveners have shown themselves entitled to a rescission of the contract in question as against the General Electric Company and the Traction Company, there are equities and rights existing in favor of the bondholders, and especially of the persons who purchased the bonds of the Traction Company after their issuance, and before the petition asking a rescission was filed, which must be considered in determining the character of the relief that will be decreed in the case.   It is true that while the holders of the bonds of the Traction Company, which they received in exchange for an equal amount of the bonds of the Power Company, do not occupy the position of innocent purchasers for value of the property of the Eighth Street Line, yet they do hold bonds secured by the trust deed upon the combined lines, and furthermore they were not actual participants in the wrongdoing of which the interveners complain; and therefore they are in a position to ask reasonable protection from the court in the final disposition of the case. Moreover, it appears that before the petition for rescission was filed a number of the bonds held by the Electric Company were sold, with a large amount of other securities, to an unincorporated company or association, known as the Street Railway & Illuminating Properties; and thus third parties have acquired rights that must be considered.   As the interests of the bondholders would unquestionably be affected if the decree of the court should now require a separation of the combined properties, there is much reason in the contention that the relief granted should take the form of a decree for damages against the wrongdoer, rather than a decree requiring a return of the interveners' property, which cannot be accomplished without injuriously affecting the interests of the bondholders.   On behalf of the Electric and Traction Companies it is contended that, if good reason exists for refusing a return of the intervener's property in kind, then this proceeding, being in equity, must be dismissed, and the parties be relegated to an action at law for damages on the ground of deceit.   If the conclusion reached had been that there was no equity in the claim of the interveners, but that the only remedy open to them was an action for damages, it might well be that the court would dismiss the case in equity, without prejudice to their bringing an action at law.   That, however, is not the conclusion reached by the court in this case; but, on the contrary, the holding is that the interveners have made out a case entitling them to rescind the contract for the transfer of the Eighth Street property on the ground of fraud, and therefore the jurisdiction in equity is beyond question.   As against the defendants, the decree to be entered is one of rescission, to the effect that the transfer of the Eighth Street property was wrongly obtained, and that it is open to the interveners to reclaim the property.   It has, however, been made to appear on behalf of third parties that they have obtained interests in the property which will be seriously affected if the court should now attempt to separate the street-railway lines.

Under such circumstances, it is within the power of the court, while granting a decree of rescission as against the defendants, to protect the rights of third parties, by holding that the interveners cannot equitably deprive the innocent bondholders of their lien on the property; and therefore the right of rescission must be worked out by granting the interveners a judgment for the value of the property of which they were wrongfully deprived. Thus, in 1 Pom. Eq. Jur. (2d Ed.) § 237, it is said:

"If a court of equity obtains jurisdiction of a suit for the purpose of granting some distinctively equitable relief,—such, for example, as the specific performance of a contract, or the rescission or cancellation of some instrument,—and it appears from the facts disclosed at the hearing, but not known to the plaintiff when he brought his suit, that the special relief prayed for has become impracticable, and the plaintiff is entitled to the only alternative relief possible,—of damages,—the court then may, and generally will, instead of compelling the plaintiff to incur the double expense and trouble of an action at law, retain the cause, decide all the issues involved, and decree the payment of mere compensatory damages."

In the federal jurisdiction it is well settled that, if a court of equity rightfully takes jurisdiction over a subject-matter of litigation, it may retain it until complete justice is reached, although there may arise in the progress of the case some matter of which a court of law would have cognizance. Thus, in Tayloe v. Insurance Co., 9 How. 390, it was said:

"As the only real question in the case is one which a court of equity must necessarily have to decide, in the exercise of its peculiar jurisdiction, it would be an idle technicality for that court to turn the party over to his remedy at law upon the policy. And, no doubt, it was a strong sense of this injustice that led the court at an early day to establish the rule that, having properly acquired jurisdiction over the subject-matter for a necessary purpose, it was the duty of the court to proceed and do final and complete justice between the parties, where it could as well be done in that court as in proceedings at law."

As it cannot be questioned that this court, sitting in equity, had full and complete jurisdiction over the principal matter submitted upon the petition of intervention, to wit, the question whether the interveners were entitled to rescind the contract for the sale and transfer of the Eighth Street property, and, as the court finds that the interveners are entitled to rescind such contract and transfer, it is clear that it is the duty and within the power of the court to mold the final relief granted in such form as to meet the exigencies of the case, having due regard to the rights of all who may be affected by the decree, whether parties to the record or not, and that in the performance of this duty the court, while granting a decree of rescission in favor of the interveners, may require the interveners to take a judgment for the money value of their property, if it appears that the property itself cannot be returned without serious injury to other parties, who were not participants in the wrong whereby the interveners were induced to enter into the rescinded contract. In form, therefore, the decree will require the interveners to deposit with the clerk of the court all the bonds and stock of the Traction Company received for the transfer of the Eighth Street property; will adjudge the interveners to be entitled,

as against the defendants to the petition of intervention, to a decree rescinding the contract of sale and transfer of the Eighth Street property; but, in view of the fact that innocent third parties have become interested in the property since its transfer, the decree will further adjudge that the interveners must take a money judgment against the General Electric Company and the Dubuque Light & Traction Company for the value of the Eighth Street property, instead of a decree for the return of the property in kind. As the parties have not taken evidence upon this question, the taking of proof will be opened for that purpose for a period of 60 days, upon the completion of which the case will be submitted for final decree.