UNITED STATES v. ONE CASE CHEMICAL COMPOUND.

(District Court, S. D. New York. February 10, 1913.)

Customs Duties (§ 133*)—Seizure and Sale of Property Through Mistake of Fact—Proceeding for Review—Laches.

Where an imported article was seized, forfeited, and sold by the United States for undervaluation, under a mistake of fact which was not known for some years, a delay of five years thereafter is not such laches as should debar the importer from maintaining a libel of review to reclaim the net proceeds of the property, which still remain in the registry of the court, the government having suffered no loss because of the delay.

[Ed. Note.—For other cases, see Customs Duties, Cent. Dig. §§ 316–331; Dec. Dig. § 133.*]

At Law. Proceeding by the United States against One Case Chemical Compound imported by George Leuders & Co. March 7, 1899. On libel of review. Decree for claimant.

Hans v. Briesen, of New York City, for George Leuders & Co.
Henry A. Wise, U. S. Atty., of New York City.

RAY, District Judge. March 7, 1899, George Leuders & Co. imported a case of chemical compound. This merchandise was appraised and claimed by the appraisers to have been undervalued. Pursuant to section 7, Act June 10, 1890, c. 407, 26 Stat. 134. as amended by section 32, Act July 24, 1897, c. 11, 30 Stat. 211 (U. S. Comp. St. 1901, p. 1892), the collector of customs of the port of New York seized such merchandise, and proceedings were instituted to forfeit

same. The importers entered no appearance notwithstanding a moni-tion duly published, etc., and such merchandise was condemned by decree of forfeiture entered June 6, 1899, and sold by the United States marshal July 19, 1899, and the proceeds of such sale, $117, less expenses, were deposited in the registry of the United States District Court to await distribution, and same remain on deposit. The said merchandise was imported under the name "Citroline," and the increased valuation claimed was based on the allegation that such merchandise was in fact "Ionone," a patented product under letters patent No. 556,943, then owned by Haarmann & Reimer, and which product mainly, if not entirely, by reason of such patent, commanded a much higher price in the market than "Citroline" or other similar products. In 1902 the United States attorney applied for an order of distribution of such money which was opposed by Haarmann & Reimer, and such order was not made, nor does it appear that the application was denied. At that time a suit in equity was pending in the Circuit Court of the United States wherein Haarmann & Reimer were complainants, and said George Leuders & Co. were defendants, for alleged infringement of said letters patent in making, importing, and selling, or importing and selling, the said Citroline, claiming that in fact it was Ionone. This suit came to final hearing, and Citroline was held not to be Ionone, nor an infringement. Haarmann-De Laire-Schaffer Co. v. Leuders (C. C.) 145 Fed. 357. Decree was entered in 1906, dismissing the bill for infringement. On this final hearing the United States concedes that "Citroline" is not "Ionone," and, in effect, that the charge of undervaluation was in fact not justified, and therefore that, in fact, the seizure and sale ought not to have been made. The said George Leuders & Co. has since incorporated under the laws of the state of New York, and is now a corporation, and has succeeded to all the rights of said firm of George Leuders & Co. When the government seized the said importation of merchandise, it caused a sample to be taken and an analysis made. The said George Leuders & Co. claim, and it appears, that they were denied access to or an examination of such sample, and it is also alleged:

"That prior to final hearing (in such infringement case) said (government) expert made a further analysis of said sample in order to show that it was the patented 'Ionone,' and in making said analysis the entire quantity of 'Citroline' was consumed, wherefore, the members of the firm of George Leuders & Co. did not know, prior to the decision in the patent case, in 1906, whether as a fact the said importation and shipment was or was not the patented article."

This is not denied or was admitted on the final hearing. It follows that in justice and equity as between George Leuders & Co. and the United States the money, proceeds of such sale, belongs to the former, the importer, and not to the United States.

There has been no concealment of the fact that the balance of the proceeds of such sale made in July, 1899, has remained on deposit in court. If such proceeds had been paid into the treasury of the United States, the said George Leuders & Co. could have applied to the Treasurer of the United States for a refund thereof based on the decisions in such equity (patent) case, but no application was made there. As

there has been no concealment of the fact that the money remained in the Registry of the United States court, this fact could have been ascertained on inquiry by George Leuders & Co. at any time since 1906, the date of the decision in the patent suit.    No excuse for not making inquiry is offered, except that it was presumed and assumed the money had been paid over to the Treasury Department of the United States, and mingled with the other moneys of the United States.    But the remedy in such case was not availed of, showing a purpose not to apply to the treasury of the United States for a refund. It is quite probable that such an application would have involved expense much in excess of the money involved, $117.

The United States claims that there has been such laches in the matter, since 1906, especially, that the relief now prayed for, by opening and examining into the matter, ought to be denied, not particularly on account of the sum involved, which is of little account, but as a matter of precedent.    As the money still remains with the register of this court, and is in the possession of the court, I have no doubt of the power of the court to grant the relief prayed.    Again, the said application to the court to distribute the money has never been passed upon.

However, should the relief asked be granted?    Notice of motion for leave to file this bill or libel of review was served September 8, 1911, and leave was granted September 8, 1911, by Judge Hough, and the bill was filed October 16, 1911.

I do not think Judge Hough necessarily adjudged that the delay since 1906 is not an equitable defense, but still his allowance of the bill or libel of review indicates that in his opinion the merits should be inquired into.    The United States has neither lost any right by reason of the delay, nor has it in any respect changed its position.    The government at any time since 1906 might have moved for an order of distribution or renewed the old motion, but failed to do so until 1911.    But on this branch of the case it may be said that the United States had the money and held it properly under the decree and sale of 1899, and that it was incumbent on George Leuders & Co., if it would claim the money and seek to open that decree, to move and move promptly.    Laches is always a good defense, and may be invoked as a bar when the party invoking it cannot be put in the same position he would have occupied but for such laches, has changed his position, or lost evidence, etc.    Here the parties, so far as appears, are in the same situation they were in 1906, and the alleged laches has prejudiced no one unless it be George Leuders & Co., which corporation has lost the use of the money.

"Strictly speaking, laches implies something more than lapse of time; it requires some actual or presumable change of circumstances rendering it inequitable to grant relief."    16 Cyc. L. & P. 152; Merrill v. National Bank of Jacksonville, 173 U. S. 131, 19 Sup. Ct. 360, 43 L. Ed. 640; O'Brien v. Wheelock, 184 U. S. 450, 22 Sup. Ct. 354, 46 L. Ed. 636.    In the Merrill Case, supra, the court said:

"Less than two years having elapsed from the payment of the first dividend to the filing of this bill, and the other creditors of the bank not having been

harmed by the delay, no presumption of laches is raised, nor can an estoppel properly be held to have arisen."

In Hubbard v. Manhattan Trust Co., 87 Fed. 51, 59, 30 C. C. A. 520, 528, the Circuit Court of Appeals in this circuit, Wallace, Lacombe, and Shipman, held:

"The defense of laches is not a mere matter of time, like limitation, but is a question of the inequity of enforcing the claim"—citing Galliher v. Cadwell, 145 U. S. 368, 12 Sup. Ct. 873, 36 L. Ed. 738.

The same rule is declared in Old Colony Trust Co. v. Dubuque Light & Traction Co. (C. C.) 89 Fed. 794.

Here the money, the residue of the proceeds of the property seized and sold by the United States for its own benefit and in the enforcement of its own laws, has not changed hands. No right of third persons has intervened, and no wrong can be done to any one by turning over such proceeds of such sale to the George Leuders & Co. The United States suffers nothing. The sale is not interfered with. The purchaser retains his property, and the expenses of the seizure and sale were long since paid from the proceeds, and all the importer asks is that the remainder of such proceeds be turned over to it and not retained by the government as the seizure and sale were made under a mistake of fact, viz., that "Citroline" was the same as "Ionone," and therefore undervalued, when in fact it was not. I am of the opinion that no dangerous or troublesome precedent will be established by granting the relief prayed for. In this case no fraud was practiced by any one but the decree of 1899, which authorized the seizure and sale, proceeded on a mistake of fact, which it was impossible or impracticable for the importer to show at that time, and I do not think relief should now be denied for the reason the importer, George Leuders & Co., did not then go to the great expense of showing that that particular "Citroline" was not "Ionone," which would have involved the taking of testimony abroad, and an analysis of this particular shipment which it was impossible for George Leuders & Co. to make, as the government had seized and retained the entire importation. A similar state of facts will rarely arise. I think, therefore, that there should be a decree in so far vacating and setting aside the decree of June 6, 1899, as to permit the insertion therein of a provision directing the clerk of the United States District Court of the Southern District of New York to pay over to George Leuders & Co. the proceeds of the sale referred to now remaining on deposit in this court, less lawful commissions.

There will be a decree accordingly.